1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

MARTIN MONICA,

     Plaintiff,

   v.

BRYAN WILLIAMS, et al.,

     Defendants.

Case No.  15-cv-04857-BLF

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[Re:  ECF 22]

     Plaintiff Martin Monica brings this action following an allegedly unconstitutional traffic stop, detention, and de facto arrest.  Monica brings suit under 42 U.S.C. § 1983 against the City of Santa Clara ("City") and the individual police officers involved in the incident: Bryan Williams, Luke Erickson, and Patrick Estes ("Officer Defendants") (collectively, "Defendants").  The City and the Officer Defendants seek summary judgment on all claims.  *See generally* Mot., ECF 22.  The Court has considered the briefing, the admissible evidence, and the argument presented at the hearing on November 17, 2016.  For the reasons discussed below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.    FACTS[1]

     On October 22, 2013, at around 9:00 or 9:30 p.m., Monica was driving his 1992 Honda Accord in San Jose, California, with his son in the passenger seat.  Williams Decl. ¶ 2, ECF 23; Monica Dep. 32:24–33:24, ECF 32-2.  Monica made a left turn from The Alameda onto Newhall, which Officer Williams witnessed.  Williams Decl. ¶2.  Williams claims that Monica's car did not have a front license place in violation of California Vehicle Code section 5200(a), so he decided to

---

[1] The facts set forth in this section are undisputed unless otherwise noted.

United States District Court
Northern District of California

initiate a traffic stop.  *Id.*  Monica contends that his car did have a front license plate attached to the vehicle.  Monica Dep. 34:2–8.

### A.  Initial Traffic Stop

Monica continued driving and made a right turn on Park Avenue.  Williams Decl. ¶ 3; Monica Dep. 40:1–4.  The parties dispute what happened next.  In his declaration, Williams states that he activated his emergency lights, which include a forward-facing red lamp, and advised the communications dispatch center that he was initiating a vehicle stop.  Williams Decl. ¶ 3. Williams contends that after he activated the emergency lights, Monica activated his left-turn signal and made a left turn into a private driveway.  *Id.*  At his deposition, Monica testified that he made a left turn into the driveway before the police lights came on, and he only noticed the police car once he was already in the driveway.  Monica Dep. 40:15–41:22.

After Monica stopped his car, he opened the driver's side door.  *Id.* 44:10–14; Williams Decl. ¶ 4.  Monica contends he opened the door "a little," yelled out that his window did not work, and immediately complied with Williams' request to close the door.  Monica Dep. 44:14–17. Williams states that Monica opened the door about two-feet wide, and that he instructed Monica to close the door twice before Monica complied.  Williams Decl. ¶ 4.

Williams approached Monica's car, and Monica provided his driver's license and registration.  *Id.* ¶ 5; Monica Dep. 45:10–14.  While Williams was speaking to Monica, Monica volunteered that he was a retired San Jose police officer and a retired chief of police.  Williams Decl. ¶ 6; Monica Dep. 47:1–4.  Williams asked Monica for identification to confirm his police experience, but Monica told him either that he did not "carry that stuff around," Williams Decl. ¶ 6, or to call the San Jose Chief of Police to confirm his status.  Monica Dep. 47:17–25.  After this exchange, Williams returned to his patrol vehicle and asked the Santa Clara Police Department ("SCPD") records office to "run" a check on Monica's license and for criminal warrant information.  Williams Decl. ¶ 7.  The records' clerk informed Williams that Monica had been suspected of impersonating a police officer during a vehicle stop in 2006.  *Id.*

### B.  Investigatory Detention / De Facto Arrest

Citing concerns that Monica was engaged in criminal activity, specifically engaging in a

2

pattern or practice of impersonating another person or a police officer, Williams requested an additional unit to his location.  Williams Decl. ¶ 9.  Officers Estes and Erickson arrived at approximately 9:40 p.m.  *Id.*  Once Estes and Erickson arrived, all three officers approached Monica, and Williams ordered Monica out of the car.  *Id.* ¶ 11; Monica Dep. 58:6–7.  While the parties dispute each other's tone, they agree that Williams asked Monica whether he was carrying a firearm, ordered him to get out of the car, and conducted a pat search.  Williams Decl. ¶ 12; Monica Dep. 58:7–12.  Finding no weapons, Williams, Erickson, and Monica walked away from the vehicle so that the officers could question Monica about the prior incident and attempt to determine whether Monica was impersonating a police officer.  Estes remained near Monica's car, speaking to Monica's son.  Williams Decl. ¶¶ 13, 14; Monica Dep. 62:14.

After walking a few steps from the car, Williams ordered Monica to sit on the curb. Monica Dep. 65:4–9; Williams Decl. ¶ 13.  According to Williams, Monica refused to comply with this order despite repeated requests.  Williams Decl. ¶ 14.  Monica states, however, that he responded "Okay, not a problem," in response to Williams' first request that he sit on the curb, but moved slowly due to his age and medical condition.  Monica Dep. 62:14–17.

Because Williams and Erickson perceived Monica as refusing to comply with their orders, Williams grabbed Monica's left hand and wrist and Erickson grabbed Monica's right hand.  *Id.* at 62:17–22; Williams Decl. ¶ 14.  Both officers then forced Monica to the ground and secured him in handcuffs.  Williams Decl. ¶ 14; Monica Dep. 62:17–22.  Williams states that before taking this action, Erickson informed Monica that he was detained, and as a result, his movements could be controlled.  Williams Decl. ¶ 14.  Monica contends, however that the officers acted without warning, put him in a rear twist lock to force him to the ground, and did not double-lock the handcuffs, all causing him severe pain.[2]  Monica Dep. 62:19–63:4, 80:10–82:22.

---

[2] In his deposition, Monica stated that the officers caused a radial fracture in his right arm. Monica Dep. 90:2–25; Opp'n 3, ECF 32.  Defendants object to this evidence as lacking foundation and hearsay.  Reply ISO Mot. 5, ECF 34.  Because Monica merely parrots what an emergency room doctor and/or nurse allegedly told him, the Court SUSTAINS this objection, finding that it is hearsay and STRIKES the reference from Plaintiff's opposition.  The Court will allow evidence as to how his arm felt, but not as to the diagnosis.  At trial, any attempt to introduce the diagnosis will require a medical expert.

United States District Court
Northern District of California

1    Unable to elicit any information from Monica, the officers terminated the stop, removed

2    the handcuffs, and cited Monica for violating section 5200(a) of the California Vehicle Code.

3    Williams Decl. ¶ 15; Monica Dep. 83:13–25.  Monica states that he had been in handcuffs for

4    approximately 15 minutes, whereas Williams claims that Monica was handcuffed for only 3 to 5

5    minutes.  Monica Dep. 85:6–8; Williams Decl. ¶ 15.  Monica further states that he estimates the

6    entire stop lasted 90 minutes.  Monica Dep. 84:11–15.

7    ### C.    This Lawsuit

8    Monica filed this lawsuit on October 21, 2015.  Compl., ECF 1.  The Complaint asserts a

9    claim under 42 U.S.C. § 1983 against the Officer Defendants for deprivation of (1) the right to be

10   free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth

11   Amendments; (2) the right not to be deprived of life, liberty, or property without due process of

12   law, as guaranteed by the Fifth and Fourteenth Amendments; (3) the right to be free from the use

13   of excessive force by police officers, as guaranteed by the Fourth, Fifth, and Fourteenth

14   Amendments; (4) the right to be free from arrest without probable cause, as guaranteed by the

15   Fourth and Fourteenth Amendments; (5) the right to the free exercise of speech, association, and

16   the press, as guaranteed by the Fourth and Fourteenth Amendments; (6) the right to equal

17   protection of the law, as guaranteed by the Fourteenth Amendment; (7) the right to local intrastate

18   travel as guaranteed by the substantive due process provisions of the U.S. Constitution; (8) the

19   right to be free from interference within the zone of privacy, as guaranteed by the Ninth and

20   Fourteenth Amendments; and (9) the right to prompt medical attention while in custody, as

21   guaranteed by the Fifth and Fourteenth Amendments.[3]  Compl. ¶ 33(a)–(i).  Monica also asserts a

22   claim under section 1983 against the City for its pattern and practice of ongoing constitutional

23   violations.  *Id.* ¶¶ 36, 37.

24   ## II.    LEGAL STANDARD

25   "A party is entitled to summary judgment if the 'movant shows that there is no genuine

26   dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *City of*

27

28   ---

[3] Defendants' motion for summary judgment does not address (2), (5)–(9).

*United States District Court*
*Northern District of California*

1   *Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P.

2   56(a)).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty*

3   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists if there is sufficient

4   evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id*. at 248–49.

5        The party moving for summary judgment bears the initial burden of informing the court of

6   the basis for the motion, and identifying portions of the pleadings, depositions, answers to

7   interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

8   fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the moving party

9   must either produce evidence negating an essential element of the nonmoving party's claim or

10  defense or show that the nonmoving party does not have enough evidence of an essential element

11  to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

12  *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

13       If the moving party meets its initial burden, the burden shifts to the nonmoving party to

14  produce evidence supporting its claims or defenses.  *Id.* at 1103.  If the nonmoving party does not

15  produce evidence to show a genuine issue of material fact, the moving party is entitled to

16  summary judgment.  *Celotex*, 477 U.S. at 323.  "The court must view the evidence in the light

17  most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor."

18  *City of Pomona*, 750 F.3d at 1049.  However, "the 'mere existence of a scintilla of evidence in

19  support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment.  *Id.*

20  (quoting *Anderson*, 477 U.S. 242, 252 (1986)).  "'Where the record taken as a whole could not

21  lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  *Id.*

22  (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

23  ## III.  DISCUSSION

24       The Officer Defendants move for summary judgment on all claims against them, but

25  address only the allegedly unlawful search and seizure and alleged use of excessive force, for

26  which they argue they are entitled to qualified immunity.  The Officer Defendants do not address

27  Plaintiff's remaining allegations, except to claim the other charges are not plausible.  Mot. 12.

28       The City moves for summary judgment as to the claim against it, arguing that there is no

*United States District Court*
*Northern District of California*

5

evidence suggesting a pattern of unlawful vehicle stops or unreasonable force by the SCPD. In his opposition, Monica concedes that his claim against the City has no merit and does not object to the motion being granted in favor of the City. Opp'n 1, ECF 32. The Court thus GRANTS Defendants' motion for summary judgment as to the claim against the City. Accordingly, the only remaining claim is the § 1983 claim against the Officer Defendants.

### A.    Legal Standard re Qualified Immunity

A government official sued under § 1983 is entitled to qualified immunity unless the plaintiff shows that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). When addressing the second prong, a court may not define the constitutional right at a high level of generality, because "doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "A right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013). "The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." *Id.*

Monica identifies the relevant Fourth Amendment rights that were violated as his right to be free from "unreasonable searches and seizures," "arrest without probable cause," and "excessive force by police officers." Compl. ¶¶ 33(a), (c), (d). Plaintiff's opposition to Defendants' motion provides more detail as to his Fourth Amendment theories, indicating that he challenges the existence of reasonable suspicion for the initial traffic stop, and the investigatory detention. He further claims an absence of probable cause to support his purported arrest.

## B.    Initial Traffic Stop

Monica's challenge to the traffic stop is easily disposed of under the "constitutional violation" prong.

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona,* 437 U.S. 385, 390 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)).  A traffic stop constitutes a seizure, and a police officer must have a "reasonable suspicion" that a violation of the law has occurred before detaining a motorist.  *Bingham v. City of Manhattan Beach* 341 F.3d 939, 946 (9th Cir.2003) (citing *Whren v. United States,* 517 U.S. 806, 809–10 (1996)), *abrogated on other grounds by Virginia v. Moore*, 553 U.S. 164 (2008), *as recognized in Edgerly v. City of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010); *see also Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (explaining that the investigatory-stop standard is met in the traffic-stop setting "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation").  To form reasonable suspicion, an officer must have "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity."  *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (internal quotation marks omitted).  For purposes of qualified immunity, whether a reasonable officer could have believed reasonable suspicion existed is "essentially a legal question."  *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).  "Where the underlying facts are undisputed, a district court must determine the issue on motion for summary judgment."  *Id.*

Even if an officer makes a mistake of fact, that mistake "will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot."  *United States v. Mariscal*, 285 F.3d 1127, 1131 (9th Cir. 2002).  "Nevertheless, an officer's belief in a mistaken fact must be held reasonably and in good faith."  *United States v. Miguel*, 368 F.3d 1150, 1154 (9th Cir. 2004) (internal quotation marks omitted).

1    Williams justifies the traffic stop by arguing that Monica's vehicle did not have a front

2  license plate, in violation of Cal. Veh. Code § 5200(a).  At his deposition, Monica testified that the

3  license plate was affixed to the front of his car, and now argues that because of this, Williams did

4  not have reasonable suspicion to stop him.[4]  Monica Dep. 34:2–8.  However, at his deposition,

5  Monica acknowledged that the stop was reasonable, even if it was mistaken:

6
>    Q. In your opinion, would somebody seeing [your license plate] at
>    night not necessarily immediately recognize [it] as the license plate?

7
8
>    A. Yes, because the way it was pushed back, um, you know, it's not
>    a normal, in the sense, phewt [sic], out.  So if you're looking for it in
>    that capacity, you could have a difficulty in recognizing it.

9
10
>    Q. So you don't fault the officers for suspecting that you didn't have
>    a front license plate, you fault them for not checking it after you told
>    them, "Go look at it, it's there"?

11
>    A.  Correct.

12  *Id.* at 52:10–21.

13    Plaintiff attempts to recover from this admission with a photograph of his car —taken the

14  day after the incident—with the front license plate affixed as he claims it was at the time of the

15  traffic stop.  Ex. A to Monica Decl., ECF 32-5; Monica Decl. ¶¶ 2–4, ECF 32-4.  However, the

16  photograph, taken during the day, says nothing about the visibility of the license plate at the scene,

17  in the dark.  Accordingly, because Monica admits that the "mistake" was reasonable, and because

18  stopping a driver for a violation of the California Vehicle Code is permissible under the Fourth

19  Amendment, Williams is entitled to qualified immunity for the initial traffic stop under the

20  "constitutional violation" prong of the qualified immunity analysis.  *See United States v. Lopez*,

21  No. C 08-00342, 2008 WL 4820753, at *2 (N.D. Cal. Nov. 3, 2008) (officer's observation that

22  defendant's car did not have a front license plate supported reasonable suspicion to justify the

23  traffic stop), *aff'd*, 397 Fed. Appx. 338 (9th Cir. 2010).  Further, Officers Estes and Erickson are

24  entitled to summary judgment on this issue because the undisputed evidence demonstrates that

25  neither officer was even on the scene until after the traffic stop was initiated.

26

27

28  [4] The undisputed evidence shows that only Officer Williams was involved in the initial traffic
stop.  Williams Decl. ¶¶ 3, 4, 9.

United States District Court
Northern District of California

United States District Court
Northern District of California

### C.    Initial Detention

Monica argues that even if the initial stop was valid, the interaction became an unlawful detention because the Officer Defendants did not have legal justification to detain him.  This too can be disposed of under the first prong of the qualified immunity analysis.

Even a seizure that is lawful "can violate the Fourth Amendment if its manner of execution unreasonably infringes on interests protected by the Constitution."  *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  In *Rodrigez v. United States*, 135 S. Ct. 1609 (2015), the Supreme Court held:

> Like a *Terry*[5] stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop and attend to related safety concerns.  Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose."  Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.

135 S. Ct. at 1614 (internal citations omitted) (footnote added).  The Court explained that "[t]he seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'  *Id.* at 1615 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)).  "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop[, but] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."  *Id.* Accordingly, possible criminality is the key to any investigatory stop or prolonged detention.  *Terry*, 392 U.S. at 30.

In the present case, the crimes in question were failure to display a front license plate and impersonating an officer in violation of Cal. Penal Code §§ 538d, 529.  Williams Decl. ¶ 8.  Williams cites to Monica's allegedly unusual conduct in justifying his detention. Mot. 16.  First, Monica made a left turn into a private driveway after Williams activated his emergency lights.  Williams Decl. ¶ 3.  In Williams' experience, most drivers pull to the right side of the street in response to a police stop.  *Id.*  Second, immediately after he was stopped, Monica opened the driver's side door of his vehicle, and Williams had to ask him to close it twice before Monica complied.  *Id.* ¶ 4.  Finally, Monica volunteered that he was a retired police officer, but did not

---

[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

United States District Court
Northern District of California

1  have any identification confirming his identity as such, and the records' clerk informed Williams

2  that Monica had been suspected of impersonating a police officer during a stop in 2006.  *Id.* ¶ 6–7.

3  Given this "unusual" behavior, Williams was concerned that Monica was engaged in a pattern or

4  practice of impersonating another person or police officer.  *Id.* ¶ 8.  This, the Officer Defendants

5  contend, is sufficient to establish reasonable suspicion, making the detention constitutional.

6          Monica challenges the existence of reasonable suspicion, arguing that on the face of the

7  cited statutes, no crime had occurred, and contests Williams' recitation of the facts.  Opp'n 13.  As

8  to the former, he argues that a violation of section 538d requires that the suspect display a physical

9  object and that section 529 requires "more than simply saying that you are somebody who you are

10 not."  *Id.* at 14.  It is undisputed that Monica did not display a physical object or do anything more

11 than state that he was a retired police officer and police chief.  Additionally, Monica seeks to

12 explain his behavior.  According to Monica, he made the left turn into the private driveway *before*

13 Williams activated his emergency lights, and thus, that act creates no reasonable suspicion.

14 Monica Dep. 41:12–19.  Monica also testified that the opening of the car door was innocent—he

15 only opened the door because his window was broken and would not roll down.  *Id.* 44:14–23.

16 Thus, there were no facts justifying a detention.  *Id.*

17          In reply, the Officer Defendants stress that Williams was not required to have conclusive

18 evidence of every element of a crime.  Reply ISO Mot. 4.  Therefore, it was not necessary that

19 Williams actually observe some sort of badge or identification supporting his allegedly fictitious

20 identity; rather, reasonable suspicion that Monica was violating the law is sufficient.  *Id.* at 4–5.

21 Additionally, the Officer Defendants cite section 148.9 of the California Penal Code, which does

22 not require the use of any device to constitute a misdemeanor crime of impersonation.  *Id.* at 5.

23          At the November 17, 2016, hearing, Plaintiff's counsel objected to the argument that

24 Williams was not required to have conclusive evidence of every element of the suspected crime,

25 and the Court allowed Plaintiff to file a surreply on this point.  *See generally* Pl.'s Surreply, ECF

26 36.  Plaintiff cites to *Melendres v. Arpaio* (*Melendres I*), 695 F.3d 990 (9th Cir. 2012), *Ortega-*

27 *Melendres v. Arpaio*, 836 F. Supp. 2d 959, 977 (D. Ariz. 2011), and *Melendres v. Arpaio*

28 (*Melendres II*), 989 F. Supp. 2d 822, 891 (D. Ariz. 2013), to support his assertion.  *Id.* at 2.

1    However, Defendants correctly distinguish the facts of those cases from the facts at hand.  Defs.'

2    Resp. to Pl.'s Surreply 2, ECF 39.

3        The cases cited by Plaintiff involved motorists who were the targets of vehicle stops based

4    on racial profiling.  In *Melendres I*, the Ninth Circuit found that because mere unauthorized

5    presence in the United States is not a crime, suspicion of unauthorized presence alone does not

6    give rise to an inference that criminal activity is "afoot."  695 F.3d at 1001.  Therefore, the Court

7    held that presence in the United States, standing alone, is insufficient to justify a stop by police

8    officers who are not authorized to enforce civil immigration violations.  *Id.*  This line of cases does

9    not support Monica's argument because the Court did not suggest that officers could not lawfully

10   conduct an investigative stop with reasonable suspicion of only some elements of a crime.  Indeed,

11   to require reasonable suspicion of every element of a crime would fly in the face of Supreme

12   Court that "[p]robable cause does not require the same type of specific evidence of each element

13   of the offense as would be needed to support a conviction.  Rather, the court will evaluate

14   generally the circumstances at the time of the arrest to decide if the officer had probable cause for

15   his action[.]"  *Adams v. Williams*, 407 U.S. 14, 1493 (1972).  The same must be true for

16   reasonable suspicion.

17       Thus, the fact that Monica merely stated that he was a retired police officer and police

18   chief rather than providing some form of identification does not undermine the decision to

19   temporarily detention him.  It is undisputed that Monica opened his door in response to being

20   pulled over.  That he can explain his behavior is of no consequence.  Additionally, Monica does

21   not dispute the fact of the prior incident in which he was suspected of having impersonated a

22   police officer, that the records' clerk informed Williams of the incident, or that Monica told

23   Williams that did not recall the incident.  Viewing these facts in light of his experience, Williams

24   concluded that additional investigation was warranted.  Williams Decl. ¶ 9.  "Police officers are

25   allowed to draw inferences from facts that support a finding of reasonable suspicion."  *Navarro v.*

26   *Sterkel*, No. 11-cv-1700-LHK, 2012 WL 3249487, *6 (N.D. Cal. Aug. 7, 2012).  This is exactly

27   what Williams did.

28       On balance, the Court finds that the undisputed evidence is sufficient to provide Williams

United States District Court
Northern District of California

11

with some objective manifestation that Monica was involved in unlawful activity.  Because the Court concludes that Williams had reasonable suspicion to detain Monica temporarily, the initial detention did not amount to a constitutional violation.  Thus, the Court GRANTS summary judgment with respect to Plaintiff's initial detention.

**D.    De Facto Arrest**

**i.    Constitutional Violation**

Plaintiff next argues that Plaintiff's detention became an arrest requiring probable cause. To make this argument, Monica attacks two aspects of the detention: (1) the intrusive tactics used by the officers, specifically forcing him into a seated position and handcuffing him and (2) the length of the detention.  Defendants do not seek summary judgment on the ground that there was probable cause to arrest Monica.  Therefore, this order focuses on whether the officer reasonably believed that the tactics used were necessary to protect their safety such that the detention remained an investigatory detention that required only reasonable suspicion.  Insofar as Defendants offer no evidence or argument to support a finding of probable cause for a lawful arrest, if there is evidence sufficient to support a dispute on this issue, it must be presented to a jury.

The Ninth Circuit has explained that there is "no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest."  *United States v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988).   To determine whether a detention amounts to a de facto arrest, courts look to the totality of the circumstances.  *United States v. Ricardo D.*, 912 F.2d 337, 342 (9th Cir. 1990); *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1047 (9th Cir. 2014).  When making this determination, courts consider the "intrusiveness of the methods used in light of whether these methods were reasonable given the specific circumstances."  *Green*, 751 F.3d at 1047.

In the course of an investigatory stop, an officer may use tactics to restrain a suspect when the officer reasonably believes force is necessary to protect the officer's own safety or the safety of the public.  *Alexander v. Cnty. of Los Angeles*, 64 F.3d 1315, 1320 (9th Cir. 1995).  Special circumstances might justify the use of "especially intrusive" tactics related to an investigatory stop such as: "(1) where the suspect is uncooperative or takes action at the scene that raises a reasonable

United States District Court
Northern District of California

1  possibility of danger or flight; (2) where the police have information that the suspect is currently

2  armed; (3) where the stop closely follows a violent crime; and (4) where the police have information

3  that a crime that may involve violence is about to occur." *Washington v. Lambert*, 98 F.3d 1181,

4  1185 (9th Cir. 1996).

5          Here, the "methods" used by Williams and Erickson to detain Monica became more

6  intrusive as time went on.  After Monica expressed irritation that Williams asked him whether he

7  was armed, Williams asked him to step out of the vehicle.  Williams Decl. ¶ 10.  After Monica

8  became "increasingly agitated and raised his voice" in response to Williams' desire to inquire

9  about the prior incident, Williams ordered him to sit on the curb.[6]  *Id.* ¶ 13.  Perceiving additional

10  resistance and possible aggression, Williams and Erickson grabbed Monica's hands, applied

11  pressure to force him into a seated position, and placed Monica in handcuffs.  *Id.* ¶ 14.  Monica

12  disputes these allegations, insisting that he was compliant and that Williams and Erickson exerted

13  more force than necessary.[7]  *See* Monica Dep. 58:16–23; 62:14–63:4; 64:23–70:17.

14          Additional factual questions arise as to the length of the detention.  In his deposition,

15  Monica testified that his interaction with the Officer Defendants lasted 90 minutes, and that he was

16  handcuffed for approximately 15 minutes.  Monica Dep. 85:6–8.  Williams submits a declaration

17  that Monica was handcuffed for only 3 to 5 minutes.  Williams Decl. ¶ 15.

18          The Ninth Circuit has recognized that "handcuffing substantially aggravates the

19  intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry*

20  stop."  *Green*, 751 F.3d at 1047.  However, these tactics do not automatically convert an

21  investigatory detention into an arrest requiring probable cause.  *Allen v. City of Los Angeles*, 66

22  F.3d 1052, 1056 (9th Cir. 1995).  Moreover, under *Terry*, the extent of the intrusion must be

23  "reasonably related in scope to the circumstances which justified the interference."  *Terry*, 392

24  U.S. at 21–22.

25          Accepting Plaintiff's evidence in the light most favorable to him, a reasonable jury could

26

27  [6] Monica denies any resistance or that he raised his voice.  Monica Dep. 62:14–17.

28  [7] Monica does not dispute that Officer Estes was not involved in this interaction, and thus, he did not violate Monica's constitutional rights.  The Court therefore GRANTS summary judgment on this issue as to Officer Estes.

conclude that the use of handcuffs and the length of the detention were not warranted.  There is no evidence that Plaintiff was armed or otherwise posed an immediate threat, the detention did not closely follow a violent crime, and the police did not have any specific information that a crime was about to occur.  *Lambert*, 98 F.3d at 1189.  Thus, it is disputed whether the officers reasonably believed that the use of handcuffs was necessary to protect their own safety or the safety of the public.  Moreover, the Officer Defendants do not assert that probable cause existed to justify an arrest.  Accordingly, if Monica was kept in handcuffs so tight that they caused him pain for 15 minutes, a jury could conclude that the intrusion was not reasonably related in scope to the circumstances that justified the interference.

### ii.    Clearly Established Law

The Officer Defendants argue that even if a constitutional violation took place, they are entitled to qualified immunity.  Although the law was clearly established, the underlying facts are in dispute.  Under the second prong of the qualified immunity test, the dispositive inquiry is whether the right at issue was clearly established "at the time of the incident, such that a reasonable officer would have understood her conduct to be unlawful in that situation."  *Green*, 751 F.3d 1051–52 (internal quotation marks and citation omitted).  Thus, the next issue this Court must address is whether it would have been clear to a reasonable officer that it was unlawful for an officer to use force to push a cooperating individual stopped for a "fix-it" ticket and who was suspected of impersonating a retired police officer to the ground and restrain him with handcuffs for approximately fifteen minutes without probable cause.

The Officer Defendants argue that they are entitled to qualified immunity because, at the time of the incident, there was no clear law forbidding the use of handcuffs during investigative stops or establishing that the employment of handcuffs converts a detention into an arrest.  Reply ISO Mot. 3.  Plaintiff does not address this prong of the qualified immunity analysis.

Here, assuming that Monica remained in tight handcuffs that caused pain for 15 minutes, it should have been clear to a reasonable officer that such a detention was not lawful.  Nearly two decades ago, the Ninth Circuit found that

> the law was clearly established that, when making a *Terry* stop,
> officers may not use highly intrusive measures . . . unless the

United States District Court
Northern District of California

circumstances reasonably justify such extraordinary procedures in order to ensure the officers' safety. The law was also clearly established that if [a] *Terry*-stop suspect[ is] cooperative and the officers do not have specific information that [the suspect] is armed or specific information linking [the suspect] to a recent or inchoate dangerous crime, the use of [ ] aggressive and highly intrusive tactics is not warranted, at least when, . . . there are no other extraordinary circumstances involved.

*Lambert*, 98 F.3d 1192. Thus, at the time of the incident, the law was clearly established.

Here, however, the outcome of the qualified immunity analysis hinges on a disputed fact: the length of the detention, the length of time Monica was kept in handcuffs, and the extent of force used to restrain Monica in light of Monica's own conduct. "If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine." *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 70 F.3d 1095, 1099 (9th Cir. 1995). Before the issue of qualified immunity can be resolved, a jury must first determine how long the detention lasted and how long Monica remained in handcuffs, among other disputed facts. Accordingly, the Officer Defendants' motion on this issue is DENIED as to Williams and Erickson.

### E.   Excessive Force

Monica also asserts that the Officer Defendants violated his Fourth Amendment rights by using excessive force in the course of his arrest.[8] A claim of excessive force brought against police officers must be analyzed under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Smith v. City of Hemet*, 394 F.3d 689, 700–01 (9th Cir. 2005). The "objective reasonableness" of an officer's use of force in a particular case is determined "in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham*, 490 U.S. at 396–97. "Because this inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Green*, 751 F.3d at 1049 (internal quotations omitted); *see also Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) ("summary judgment or judgment as a matter of law in excessive force cases should be

---

[8] Because the parties do not dispute that Officer Estes used no force against Monica, the Court GRANTS summary judgment on this issue as to him.

1    granted sparingly").

2         Determining the reasonableness of the force used to effect a seizure requires balancing "the

3    nature and quality of the alleged intrusion" on a person's liberty against the "countervailing

4    governmental interests at stake." *Graham*, 490 U.S. at 396.  Similar to the detention analysis,

5    there is no precise definition of what constitutes sufficient government interest to justify the

6    amount of force used.  Rather, the assessment requires careful consideration of the particular facts

7    and circumstances at issue, including (1) the severity of the crime, (2) whether the suspect posed

8    an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively

9    resisting arrest or attempting to evade arrest by flight.  *Id.*; *Luchtel v. Hagemann*, 623 F.3d 975,

10   980 (9th Cir. 2010).  Of these factors, the most important generally is whether the suspect posed

11   an immediate threat.  *Graham*, 490 U.S. at 396.  However, courts must "examine the totality of the

12   circumstances and consider whatever specific factors may be appropriate in a particular case."

13   *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

14        Here, the Officer Defendants argue that the use of force was objectively reasonable under

15   the circumstances.  As to the degree of intrusion, the Officer Defendants argue that a single

16   complaint relating to tight handcuffs is not sufficient for excessive force.  Mot. 19.  They also

17   argue that the degree of force employed was "on the modest end of the spectrum—moderate

18   downward pushing into a seated position and momentary handcuffing," and was limited in scope.

19   *Id.*  Finally, the Officer Defendants argue that the decision to use force was reasonable in light of

20   the "unusual and perhaps even bizarre situation with someone who was claiming to be former law

21   enforcement, but responding to a vehicle stop in unusual ways and becoming increasingly irritated

22   as the stop went on."  *Id.* at 20.

23        Nevertheless, a genuine dispute of material fact exists such that summary judgment is not

24   warranted.  The parties dispute the length of time Monica was handcuffed and the severity of the

25   force used.  Additionally, at his deposition, Monica stated that the officers' actions caused him

26   pain in his arms, legs, and shoulders, and they did not double lock the handcuffs, which tends to

27   contradict Williams' testimony that he and Erickson used only "modest" force.  Monica Dep.

28   80:21–82:20.  Thus, Monica has submitted sufficient evidence to establish a genuine dispute of

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1    material fact as to whether excessive force was applied in violation of the Fourth Amendment.

2         The next issue this Court must address is whether the law was clearly established to a

3    reasonable officer that the force used was unreasonable under the circumstances.  As set out

4    above, the officers claim that the circumstances in this case were as follows:  Plaintiff was driving

5    in San Jose when Officer Williams pulled him over for not having a front license plate.  After

6    speaking with Mr. Monica and the records' clerk, Williams suspected that Monica was involved in

7    a pattern or practice of impersonating a police officer and detained Monica.  Monica showed some

8    indication of resistance, whether intentional or otherwise, and Williams and Erickson forced

9    Monica into a seated position and handcuffed him for approximately fifteen minutes.  Plaintiff

10   alleges the handcuffing caused pain in his arms, shoulders, and legs.

11        At the time of the incident, it was clearly established that "use of force is contrary to the

12   Fourth Amendment if it is excessive under objective standards of reasonableness."  *Graham*, 490

13   U.S. at 388.  Plaintiff argues it would have been clear to a reasonable officer confronted with this

14   situation that the alleged use of force was unreasonable.  Opp'n 16.  In support of this argument,

15   Plaintiff cites *Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003).  The Officer Defendants argue,

16   however, that they are entitled to qualified immunity because a reasonable officer could have

17   determined that forcing Monica into a seated position and handcuffing him was appropriate under

18   the circumstances.  Reply ISO Mot. 5.  Specifically, they point to the fact that Monica was

19   suspected of impersonating a police offer and was becoming increasingly agitated.  *Id.*  The

20   Officer Defendants also argue that *Meredith* is not on point because there, the plaintiff was not the

21   target of the investigation.  *Id.* at 6.  The Court agrees with Plaintiff.

22        In *Meredith*, the Ninth Circuit held that an Internal Revenue Service ("IRS") agent

23   executing a search warrant in an office building was not entitled to qualified immunity on

24   summary judgment on the claim that he used excessive force in handcuffing a resident of the

25   building because the use of handcuffs was not justified.  342 F.3d 1057.  There, a resident of the

26   building subject to the search insisted to see the warrant.  After repeated requests, the agent

27   defendant "grabbed her by the arms, forcibly threw her to the ground and, twisting her arms,

28   placed handcuffs on her wrists."  *Id.* at 1060.  The plaintiff alleged that "the handcuffs were closed

17

1   around her wrists so tightly that they caused her pain, and that she suffered extensive bruising by

2   the force used against her." *Id.* The defendant made the plaintiff sit on a nearby couch with the

3   handcuffs on while the agents completed their search. The Ninth Circuit found that it was clearly

4   established that the amount of force the plaintiff said the IRS agent used in handcuffing her was

5   excessive, and that a reasonable agent in the position of the IRS agent would have known that

6   such conduct violated the Fourth Amendment. *Id.* at 1061. The Ninth Circuit reasoned that the

7   plaintiff did not pose a safety risk, made no attempt to leave the property, and was suspected of

8   committing only nonviolent offenses. *Id.*

9        Accepting Plaintiff's evidence in the light most favorable to him, here, like in *Meredith*,

10  Monica did not pose a safety risk and made no attempt to leave the area or resist the Officer

11  Defendants' instructions. Moreover, the Officer Defendants were investigating whether Monica

12  was involved in a pattern or practice of impersonating a police officer, a nonviolent offense.

13  Accordingly, the need for force, if any, was minimal at best. Under these circumstances, it would

14  have been clear to a reasonable officer that the force used to restrain Monica and the use of

15  handcuffs was unreasonable.

16       In sum, after considering Plaintiff's version of the facts, the Court finds that it would have

17  been clear to a reasonable officer that the force used was unreasonable under the circumstances.

18  Accordingly, Williams and Erickson are not entitled to summary judgment on qualified immunity

19  regarding the use of force, and thus, their motion for summary judgment on this issue is DENIED.

20  **IV.   ORDER**

21       For the foregoing reasons, it is HEREBY ORDERED:

22       1.   Defendants' motion for summary judgment as to the City is GRANTED.

23       2.   Defendants' motion for summary judgment is GRANTED as to Officer Estes.

24       3.   Defendants' motion for partial summary judgment as to Officers Williams and

25  Erickson is GRANTED with respect to Plaintiff's Fourth Amendment claim arising out of the

26  traffic stop and initial detention.

27       4.   Defendants' motion for partial summary judgment as to Plaintiff's Fourth

28  Amendment claim for the alleged de facto arrest and use of excessive force is DENIED as to

United States District Court
Northern District of California

Officers Williams and Erickson.

**IT IS SO ORDERED.**

Dated: December 20, 2016

BETH LABSON FREEMAN
United States District Judge