# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MARTIN MONICA,<br>           Plaintiff,<br>   v.<br>BRYAN WILLIAMS, et al.,<br>           Defendants. | Case No. 15-cv-04857-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL**<br><br>[Re: ECF 85] |

Civil rights cases are among the most important matters to come before the Court. Ordinary people have the opportunity to vindicate their constitutional rights before a jury. In these difficult cases, confidence in the fairness of the judicial system is paramount for both the winner and the loser of the case in order to sustain the integrity of the judicial system. It is with these principles in mind that the Court considers Plaintiff's motion for new trial.[1]

In this case, Plaintiff Martin Monica seeks a new trial pursuant to Fed. R. Civ. P. 59(a), claiming that the undersigned was biased against him. Mot. for New Trial ("Mot."), ECF 85. Plaintiff's motion is based on claims related to the Court's ruling on summary judgment, including the Court's comments at the hearing; the Court's repeated reference to a portion of Plaintiff's deposition testimony that the Court identified as unfavorable to Plaintiff; the Court's rulings on trial objections; the Court's handling of a sidebar discussion and subsequent ruling; and the undersigned's tone of voice and facial expressions at trial. Plaintiff supports this motion with counsel's declaration recounting his recollection of the comments made by the Court. No trial transcripts have been submitted.

---

[1] Pursuant to Civ. L.R. 7-1(b), the Court finds Plaintiff's motion suitable for submission without oral argument and hereby VACATES the hearing scheduled for July 6, 2017.

Defendants, City of Santa Clara Police Officers Bryan Williams and Luke Erickson, respond that Plaintiff received a fair trial and that there was no actual bias at any stage of the proceedings. Defendants point to rulings made that were favorable to Plaintiff and unfavorable to Defendants throughout the litigation. Defendants further argue that Plaintiff never made a contemporaneous record at the time counsel formed these perceptions of bias so as to allow the Court and defense counsel to respond and correct Plaintiff's counsel's impressions. Defendants contend that Plaintiff's counsel's impressions of bias are speculative and without foundation.

**I.  BACKGROUND**

Mr. Monica brought this civil rights case against the City of Santa Clara and several of its officers after he was stopped for purportedly not having a front license plate. The incident escalated to the point where the officers took Mr. Monica out of his car and handcuffed him after he informed the officers that he was a retired police officer and police chief, but did not have such identification with him that night. Mr. Monica claimed that he was unlawfully detained, arrested, handcuffed, and injured by police. As a result of the incident, Mr. Monica sued for violation of his constitutional rights under 42 U.S.C. § 1983. Compl., ECF 1. Defendants denied all claims and asserted that they were entitled to qualified immunity. Answer, ECF 11. Defendants filed a motion for summary judgment that was denied on virtually all grounds. The Court granted summary judgment only on the constitutionality of the initial *Terry* stop. The Court ruled that all other issues would proceed to trial. *See* Order Granting in Part & Denying in Part Mot. Summ. J. ("Summ. J. Order"), ECF 41. The case did proceed to jury trial over four days, resulting in a defense verdict on all counts. Jury Verdict, ECF 77. Plaintiff timely filed this motion for new trial.

**II.  LEGAL STANDARD**

    **A.  Motion for a New Trial**

Under Federal Rule of Civil Procedure 59(a)(1), a court "may, on motion, grant a new trial on all or some of the issues." Fed. R. Civ. P. 59(a)(1). A court may grant a new trial "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir.

2007) (citation and internal quotation marks omitted). A judge should only grant a new trial if she "is left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987) (internal citations omitted)). The court is not required to view the trial evidence in the light most favorable to the verdict when it considers a Rule 59(a) motion. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). Instead, "the district court can weigh the evidence and assess the credibility of the witnesses." *Id.* (citation omitted). "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Id.* (citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

**B. Judicial Bias**

"The Due Process clause 'requires a fair trial in a fair tribunal before a judge with no actual bias against [any party] or interest in the outcome of [the] particular case.'" *Smith v. Mahoney*, 611 F.3d 978, 997 (9th Cir. 2010) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)); *see also Tracey v. Palmateer*, 341 F.3d 1037, 1048 (9th Cir. 2003) ("A fair trial in a fair tribunal is a basic requirement of due process." (citation and quotation marks omitted)). However, "'[o]nly in the most extreme of cases would disqualification on the basis of judge bias be constitutionally required.'" *Id.* (alteration omitted) (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986)). "A judge's conduct justifies a new trial if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." *United States v. Marks*, 530 F.3d 799, 806 (9th Cir. 2008) (citations omitted). The Ninth Circuit has recognized that there are three general circumstances in which an appearance of bias violates due process: (1) a judge who "has a direct, personal, substantial pecuniary interest in reaching a conclusion against one of the litigants;" (2) a judge who "becomes embroiled in a running, bitter controversy with one of the litigants;" and (3) a judge who "acts as part of the accusatory process." *Crater v. Galaza*, 491 F.3d 1119, 1130 (9th Cir. 2007) (internal citations and quotation marks omitted)).

Under 28 U.S.C. §§ 144 and 455, judges must remove themselves from cases if they have

3

a personal bias.[2] *See generally United States v. Sibla*, 624 F.2d 864 (9th Cir. 1980); *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978), *cert. denied*, 440 U.S. 907 (1980).

Under 28 U.S.C. § 455, a judge must disqualify himself, inter alia: (1) "in any proceeding in which his impartiality might reasonably be questioned," *id.* § 455(a); (2) "[w]here he has a personal bias or prejudice concerning a party," *id.* § 455(b)(1); or (3) where "[h]e knows that he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding," *id.* § 455(b)(4). Bias under section 455 must derive from extrajudicial sources. *In re Beverly Hills Bancorp (Commercial Paper Holders v. R.W. Hine)*, 752 F.2d 1334, 1341 (9th Cir. 1984).

Section 455(a) covers circumstances that *appear* to create a conflict of interest, whether or not there is actual bias. *Davis v. Xerox*, 811 F.2d 1293, 1295 (9th Cir. 1987). Section 455(b) covers situations in which an *actual* conflict of interest exists, even if there is no appearance of one. *Id.* Section 455(b) also describes situations that create an *apparent* conflict, because it provides examples of situations in which a judge's "impartiality might reasonably be questioned" pursuant to section 455(a). *See United States v. Conforte*, 624 F.2d 869, 880–81 (9th Cir.), *cert. denied,* 449 U.S. 1012 (1980) (citation omitted). *Actual* bias is a per se ground for disqualification. *Davis*, 811 F.2d at 1295. The Ninth Circuit has defined bias to consist of "an attitude or state of mind that belies an aversion or hostility of a kind or degree that a fair-minded person could not entirely set aside when judging certain persons or causes." *Conforte*, 624 F.2d at 881. The test for creation of *apparent* bias sufficient to require dismissal under sections 455(a) and 455(b) is an objective one: "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983) (citations omitted).

In order to prevail on a claim of judicial bias, a litigant must overcome a "strong

---

[2] Plaintiff does not invoke 28 U.S.C. § 144 as a basis for disqualification, nor does he attach an affidavit of bias to his Motion. As such, the Court need not refer Plaintiff's Motion for random assignment to another Judge. *See* 28 U.S.C. § 144; Civ. L.R. 3-14; *Mendia v. Garcia*, No. 10-CV-03910, 2017 WL 1508673, at *4 n.3 (N.D. Cal. Apr. 27, 2017). While Plaintiff has also not invoked section 455, the Court discusses it because Defendants rely on it in their opposition to Plaintiff's motion. *See* Opp'n 4.

4

presumption that a judge is not biased or prejudiced." *Sivak v. Hardison*, 658 F.3d 898, 924 (9th Cir. 2011) (quoting *Rhoades v. Henry*, 598 F.3d 511, 519 (9th Cir. 2010)). "A new trial based on judicial misconduct is warranted only if, from the record, a judge's action 'shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality.'" *Closson v. Bank of Am., NA*, 600 Fed. Appx. 575, 576 (9th Cir. 2015) (citing and quoting *United States v. Laurins*, 857 F.2d 529, 537 (9th Cir. 1988)); *see also see Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir.1986) (holding that trial judge's conduct was not improper when judge questioned witness, criticized counsel, and managed the pace of the trial).

## III. DISCUSSION

In reviewing the record in this case, the Court has considered all of its rulings and summarizes them here. The Court conducted a case management conference early in the litigation and set the case schedule on February 18, 2016. ECF 17. The parties managed the case throughout discovery without requesting Court intervention. Defendants filed a motion for summary judgment in accordance with the scheduling order and Plaintiff requested a modification of the scheduling order to extend the date for his response and to postpone the hearing date in order to complete discovery, which was granted without opposition. ECF 29. The Court ruled on Defendants' motion for summary judgment, finding that Defendants had not demonstrated entitlement to qualified immunity on the de facto arrest or excessive force claims and granted summary judgment as to the City of Santa Clara and Officer Estes, without objection. *See generally* Summ. J. Order. The Court also granted summary judgment as to the initial *Terry* stop and detention, finding that the officers had reasonable suspicion to make the traffic stop. *Id.* Thus, the case proceeded to trial.

The Court conducted its final pretrial conference, ruling on *in limine* motions. As to Plaintiff's two motions, the Court granted in part the motion to exclude Defendants' police practices expert, excluding all of the opinions identified by Plaintiff as improper regarding legal conclusions and credibility determinations, and cautioning defense counsel that his questions must be properly stated to avoid further exclusion. Order re Mots. in Lim. ("Order re MILs") 2–3, ECF 63. Plaintiff had argued that the evidence was irrelevant and highly prejudicial. *Id.* at 3. The

5

Court deferred ruling on the second motion to exclude evidence of Plaintiff's prior political activities, lawsuits, and his reason for being in the area of the incident. *Id.* At trial, the Court granted the exclusion motion over Defendants' objections. As to the defense motions *in limine*, the Court granted two motions that Plaintiff did not oppose and denied the third. *See generally id.* The Court thereafter conducted an in-chambers, unreported jury instruction conference. With the collaboration of counsel and the Court's determination of the disputed issues, a complete set of jury instructions and verdict form were developed in advance of trial. There are no objections to the jury instructions or verdict form at issue in this motion.

The case proceeded to trial over four days. At the close of the evidence, the Court deferred ruling on Defendants' Rule 50(a) motion and allowed the case to go to the jury. The jury returned a verdict for Defendants.

Plaintiff identifies a number of rulings or other conduct by the Court in support of his motion. The Court will address each separately.[3]

### A. Summary Judgment Hearing and Ruling

Plaintiff argues that the Court "first became involved in the merits of the case in the hearing on defendants' motion for partial summary judgment." Mot. 2. Plaintiff makes three allegations of impropriety during that hearing. The Court addresses each in turn.

First, Plaintiff claims that the Court improperly relied on facts not most favorable to him as the non-moving party when it granted summary judgment on the initial detention. Mot. 2. Plaintiff points to the Court's discussion at the hearing of a portion of Plaintiff's own deposition

---

[3] Plaintiff relies on a number of cases to support his motion for new trial. Those cases aptly set forth the standard the Court must consider but do not support his claims. *See* Mot. 5–7; *GPNE Corp. v. Apple, Inc.*, 830 F.3d 1365, 1373 (Fed. Cir. 2016) (no finding of misconduct where judge allowed improper attorney argument); *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (finding "troubling" where judge took over questioning of witnesses on behalf of the State); *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 709 (9th Cir. 1990) (as amended), *overruled on other grounds by Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) (no finding of bias where trial court's questions were "quite pointed and intemperate"); *Laurins*, 857 F.2d at 537 (finding fact that judge interrupted the prosecutor 60 times to assist him did not affect fairness of trial); *United States v. Mostella*, 802 F.2d 358, 361 (9th Cir. 1986) (trial judge's extensive questioning of defense witness did not require reversal); *Knapp v. Kinsey*, 232 F.2d 458, 466–67 (6th Cir. 1956) (judicial bias found where judge actively questioned witness, advocated for the plaintiff, and suggested litigation activity favorable to plaintiff throughout the case); *United States v. Harmon*, 21 F. Supp. 3d 1042, 1049 (N.D. Cal. 2014) (juror bias case).

6

1 testimony regarding the location of his license plate, claiming that the Court relied on testimony not identified by either party and that the Court improperly refused to consider other evidence favorable to Plaintiff. *Id.* 2–3; Boskovich Decl. ISO Mot. ("Boskovich Decl.") ¶¶ 3–4, ECF 85-1. Defendants respond that the license plate testimony was submitted by Plaintiff, and that testimony contradicted Plaintiff's affidavit submitted in opposition to summary judgment. Opp'n 4–5, ECF 86 (citing ECF 32-2). Regardless, however, as is explained below, the Court did not rely on the disputed portion of Plaintiff's testimony.

Second, Plaintiff takes issue with the Court's comments about the effect of the license plate testimony, claiming that the Court's tone and manner of questioning on this issue revealed bias. Mot. at 3. Specifically, Plaintiff's counsel avers that "the Court felt that this was devastating evidence that would totally destroy plaintiff's credibility at trial." Boskovich Decl. ¶ 4. Defendants contend that Plaintiff has not accurately recounted the Court's comments or tone. Opp'n 5. Defense counsel states that he recalls the Court's tone as "matter of fact," and does not recall the Court using the term "devastating" in regard to the license plate testimony or saying that it would "destroy" Plaintiff's credibility. Stock Decl. ISO Opp'n ("Stock Decl.") ¶ 3, ECF 86-4.

The Court's recollection is more in line with that of Defendants. The Court conducted the hearing based solely on the evidence presented by the parties and does not agree with Plaintiff's complaint about the Court's tone in questioning counsel. The Court addresses difficult questions to all parties with equal seriousness and always endeavors to identify for counsel all aspects of the case that may benefit from counsel's further discussion on the record before a decision is made on the merits of the motion.

At the hearing on Defendants' motion for partial summary judgment, the Court properly probed whether Plaintiff's affidavit directly contradicted his prior sworn testimony about whether the license plate was affixed to the front of the car or inside the car at the time of the traffic stop.[4] The prior sworn testimony contained in Mr. Monica's deposition that the Court focused on

---

[4] In support of its motion for summary judgment, Defendants offered the declaration of Defendant Officer Bryan Williams who stated, "I informed Monica that I had stopped him for not having a front license plate. Monica said he had it inside the vehicle, and the passenger, his son, retrieved it from inside the vehicle and showed it to me." Williams Decl. ISO Mot. Summ. J. ¶ 7, ECF 23.

provided[5]:

> Q: Okay.
>
> A: I didn't say anything to him. I just was thinking in my mind, "Serious?" I did ask him one thing. I said, "Where is my license and registration?" He said, "It's over there on your car. Go get it." So then I walked over to my car to get my license plate—my registration, license, and they all just jumped in their cars and took off like -- they're gone."

Ex. A to Boskovich Decl. ISO Opp'n to Mot. Summ. J. ("Monica Dep.") 84:3–10, ECF 32-2.

As a preliminary matter, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Thus, even if the Court "felt that this was devastating evidence," as Plaintiff purports, it would not demonstrate bias. *Id.* ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."). Moreover, the discussion on the record was in line with Ninth Circuit law requiring a court to make a factual determination that an affidavit is a "sham" before excluding it. *See Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262 (9th Cir. 1991).

As to the latter, under Ninth Circuit and Supreme Court law, a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony. *Id.*; *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Exclusion of an affidavit requires the Court to make a factual determination that the contradiction was actually a "sham." *Kennedy*, 952 F.2d at 267. The testimony submitted to the Court indicated that after the stop, Plaintiff retrieved his license plate that was "on his car" along with his license and registration, contrary to the statement in the affidavit.[6] Nevertheless, based on the discussion at the hearing, the Court did not make a factual determination that the contradiction was actually a "sham," and the disputed deposition testimony

---

[5] This testimony pertains to the period of time immediately after Mr. Monica was released from detention by the Officer Defendants.
[6] At the hearing, the Court recalls Plaintiff's counsel indicating that he had not been aware of that portion of the deposition transcript.

was not a factor in the Court's ruling.[7]

In granting summary judgment on this limited issue, the court relied on a different portion of Mr. Monica's sworn testimony, offered by the defense, that provided:

> Q: In your opinion, would somebody seeing [your license plate] at night not necessarily immediately recognize [it] as a license plate?
>
> A: Yes, because the way it was pushed back, um, you know, it's not a normal, in the sense, phewt [*sic*], out. So if you're looking for it in that capacity, you could have a difficulty in recognizing it.
>
> Q: So you don't fault the officers for suspecting that you didn't have a front license plate, you fault them for not checking it after you told them, "Go look for it, it's there"?
>
> A: Correct.

Monica Dep. 52:10–21. In its ruling, the Court fully credited Mr. Monica's testimony that his license plate was affixed to the car, considered the declaration and photograph offered in opposition to summary judgment, and held that "[b]ecause Monica admit[ted] that the 'mistake' was reasonable, and because stopping a driver for a violation of the California Vehicle Code is permitted under the Fourth Amendment, Williams [was] entitled to qualified immunity for the initial traffic stop under the 'constitutional violation' prong of the qualified immunity analysis." Summ. J. Order 8. Thus, the Court cannot agree that the undersigned's tone and manner of questioning on this issue revealed bias.

Third, Plaintiff suggests that the Court's refusal to consider his affidavit authenticating a photograph showing the front of his car with a license plate affixed in the bumper area was wrong as a matter of law. (Plaintiff stated in his declaration: "The photograph accurately depicts the condition of the vehicle and the placement of the license plate on 22 October 2013." Monica Decl. ISO Opp'n to Mot. Summ. J. ¶ 4, ECF 32-4). Plaintiff's claim that the Court improperly applied the wrong legal standard in evaluating the evidence at summary judgment is not grounds for a new trial based on judicial bias. *Liteky*, 510 U.S. at 555; *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1045–46 (9th Cir. 1987) ("Texaco supports its allegations of bias merely by pointing to

---

[7] The Court further notes that Plaintiff submitted the photograph showing his affixed license plate at trial without objection or comment by the Court to the jury.

9

alleged errors at trial in refusing a request to disqualify jurors, formulating preliminary and final jury instructions, and overruling defense objections. Even if these ruling[s] were erroneous . . ., they could not justify a finding of judicial bias." (citations omitted)); *cf. Szanto v. Marina Marketplace 1*, No. 11-cv-394, 2014 WL 5293088, at *3 (D. Nev. Oct. 15, 2014) ("Even assuming for the sake of argument that the Court made legal errors in this case, legal error does not constitute grounds for recusal without a showing of external personal bias."). Having failed to show external personal bias, this purported legal error cannot support a claim for bias.

**B.      The Court's *Sua Sponte* Reference to the License Plate Testimony at the Pretrial Conference**

Plaintiff further argues that the Court *sua sponte* brought up the license plate testimony at the final pretrial conference in "a somewhat derogatory manner," and responded in a "sarcastic" manner upon learning that Mr. Monica had made a clarifying correction to his deposition. Mot. 3. Plaintiff's counsel recalls the Court saying "words to the effect of 'of course he did.'" *Id.*; Boskovich Decl. ¶ 7. Plaintiff further takes issue with comments he attributes to the Court at the in-chambers jury instruction conference stating that the undersigned again brought up the issue of the license plate testimony and *sua sponte* said "words to the effect that the District Court wished this was her case as a lawyer so she could cross-examine Mr. Monica on this testimony." Mot. 3–4; Boskovich Decl. ¶ 8. Defendants disagree with Plaintiff's perception of the Court's tone and attitude, stating that Plaintiff's complaints are speculative and lack foundation. Opp'n 3–4.

The Court does not dispute that it further discussed the license plate testimony at the pretrial conference and at the in-chambers jury instruction conference. However, the Court did not harbor any bias against Mr. Monica or treat him unfairly at any time. The Court also does not deny that it made a comment, in chambers at the close of the jury instruction conference, about cross-examining Mr. Monica on the license plate testimony. That was an improper comment but was not meant to disparage Mr. Monica nor was it indicative of any bias against Plaintiff. *Cf. United States v. Lopez–Martinez*, 543 F.3d 509, 513–14 (9th Cir. 2008) (judge's colloquy with prosecutor on what she needed to do to improve case did not show bias against defendant and in any event was not prejudicial because outside presence of jury); *Duckett v. Godinez*, 67 F.3d 734,

740–41 (9th Cir. 1995) (finding no actual bias where state court judge in a criminal case took over the questioning on behalf of the state to lay foundation to allow a witness to testify, expressed clear frustration and hostility toward a defense witness, and encouraged the prosecution to object "for the heck of it").

Moreover, any such statement was based exclusively on evidence presented to the Court during summary judgment, and therefore does not demonstrate bias. *See Liteky*, 510 U.S. at 555–56 ("[J]udicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases . . . may [support a bias or partiality challenge] if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible . . . [but] expressions of impatience, dissatisfaction, annoyance, and even anger, . . . are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display."); *see also Spencer v. Cavazos*, No. 09-cv-2541, 2013 WL 3761286, at \*26 (S.D. Cal. July 15, 2013) ("The trial judge's acknowledgement that he would not have found Spencer to be a credible witness in light of the evidence presented, and that her denial of responsibility on the witness stand would have given him reason to sentence her more harshly than he did was, quite simply, an 'opinion formed by the judge on the basis of facts introduced or events [which occurred] in the course of the . . . proceedings.' It does not, therefore, rise to the level of judicial bias or prejudice, nor is it evidence that Spencer received a fundamentally unfair trial." (citation omitted)). Further, Plaintiff does not challenge the fairness of the jury instructions.

### C. Evidentiary Rulings at Trial

Plaintiff next contends that the Court unfairly sustained more of Defendants' trial objections than his and interfered with Plaintiff developing his theory of the case. Counsel claims that the Court appeared angry and hostile towards Mr. Monica, his son, and his wife while they testified. Mot. 4.

First, as to claims of anger and hostility towards the witnesses, the Court disagrees with Plaintiff's counsel's impression. Although it is impossible to know what specific conduct Plaintiff is referring to, the Court recalls rarely speaking to the witnesses, except to ask them to speak

11

louder or more slowly (a common request to all witnesses). This conduct does not demonstrate actual bias. *United States v. Mostella*, 802 F.2d 358, 361 (9th Cir. 1986) ("It is entirely proper for [the judge] to participate in the examination of witnesses for the purpose of clarifying the evidence, confining counsel to evidentiary rulings, controlling the orderly presentation of the evidence, and preventing undue repetition of testimony." (citations omitted)); *see also Swinton v. Potomac Corp.*, 270 F.3d 794, 808 (9th Cir. 2001) (finding proper the court's effort to streamline the presentation of evidence).

The Court also denies any tone of voice or expressions that would indicate anger towards counsel or any witness. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Liteky*, 510 U.S. at 555; *see Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 709 (9th Cir. 1990) (as amended), *overruled on other grounds by Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) (holding reversal was not required where the court's "questioning was not marked by completed indifference [and instead sometimes was] quite pointed and intemperate").

Plaintiff further claims that he was prevented from eliciting testimony on his primary theory of the case. Mot. 4; Boskovich Decl. ¶ 11. In particular, Plaintiff contends that his theory of the case was that Defendants acted as they did because they did not believe that Mr. Monica "could possibly be a retired police officer and former chief of police." Mot. 4. Plaintiff argues that his counsel asked Officer Williams "directly if it were true that he did what he did in conformity with this theory," and the Court sustained defense counsel's objection to the question as argumentative "with an emotional tone." *Id.* Defendants contend that these perceptions are speculative and lack foundation. Opp'n 3–4.

The Court's recollection differs from that of Plaintiff's. Throughout trial, the Court ruled on objections posed by defense counsel that certain questions were argumentative and the Court can only say that the rulings reflected the undersigned's best judgment at the time as to the propriety of the question. The Court disagrees that it used "an emotional tone." Nevertheless, the Court allowed counsel to restate the questions and did not prevent Plaintiff from examining the witnesses on all issues.

Plaintiff also seems to suggest that by his tally the Court sustained more defense objections than Plaintiff's objections. Mot. 4. Even if that is true, fairness is not measured by numerical equivalence and the Court only ruled on objections posed to the Court. *Liteky*, 510 U.S. at 555 ("[Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." (internal citation omitted))); *see also Valle v. Gonzalez*, No. CV 14-6115, 2015 WL 4776944, at * (C.D. Cal. July 2, 2015) ("The trial judge's adverse evidentiary ruling does not serve as a predicate for finding judicial bias."). There is no suggestion that the Court interposed its own objections or in any way interfered with Plaintiff's presentation of the case absent a duty to rule on objections when made.

**D.     Side Bar Ruling**

Plaintiff next contends that the Court again raised the license plate testimony at a side bar and instructed defense counsel to recall Mr. Monica. Mot. 4. Plaintiff states that at the close of Plaintiff's case, defense counsel called for a side bar to request leave to recall Officer Williams, acknowledging that he had not complied with the Court's pretrial witness notification requirement.[8] Before the Court decided the issue, Plaintiff claims the Court "changed gears" and directly asked defense counsel why he had not examined Mr. Monica on the license plate deposition testimony, in light of the Court's view of its importance. *Id.* When defense counsel informed the Court that he had forgotten, Plaintiff asserts that "the Court's demeanor turned to something akin to anger and the Court instructed defense counsel to call Mr. Monica as his first witness" to inquire about that testimony. Mot. 5 (emphasis omitted); Boskovich Decl. ¶ 14. Plaintiff's counsel states that he responded that Mr. Monica was not getting a fair shake. When counsel returned to their seats and defense counsel attempted to recall Mr. Monica, the Court

---

[8] Pretrial, the Court ruled that counsel must notify opposing counsel by 6:00 pm of the witnesses expected to be called the next trial day.

13

changed its ruling and did not permit Mr. Monica to be recalled. Plaintiff's counsel asserts that the Court was angry and stared directly at Plaintiff's counsel. Mot. 4–5.

Defense counsel responds that the side bar was requested by him to seek the Court's permission to recall Officer Williams in spite of the fact that he had not advised Plaintiff the previous night that he intended to recall Officer Williams in accordance with the Court's requirement. Opp'n 6. Defense counsel states that at side bar he indicated that he wanted to recall Officer Williams to address Mr. Monica and his son's testimony that the license plate was affixed to the vehicle. *Id.* Defense counsel further states that he recalls the Court asking him why he had not simply read the license plate deposition testimony into the record during Mr. Monica's cross-examination, to which he candidly responded that he had forgotten. *Id.* Defense counsel recalls that the Court stated that it would let him recall Mr. Monica. Defense counsel states, "[a]t no time did the Court order, instruct, or mandate that defense counsel recall Plaintiff as a trial witness." *Id.*; Heaberlin Decl. ISO Opp'n Mot. ¶ 7, ECF 86-1.

In considering the side bar discussion, the Court concurs with defense counsel's recollection. In the face of Plaintiff's counsel's strong objection to recalling Officer Williams, the Court explored other means for Defense counsel to put on evidence in accordance with the Court's pretrial orders. After Plaintiff's counsel further objected, the Court reconsidered whether it would allow the defense to recall Mr. Monica. When the parties returned to counsel table, the Court made clear that it had changed its ruling and was denying Defendants' request. Neither Officer Williams nor Mr. Monica was recalled. The Court was not angry or hostile and, in fact, the Court recalls looking directly at defense counsel when instructing him that he would not be permitted to recall Mr. Monica.

Additionally, Plaintiff's objection here is surprising since he prevailed on the objection and it was defense counsel who was left standing before the jury with the Court refusing to allow him to call his next witness. Moreover, upon reflection, the Court believes that it applied its pretrial witness notification requirement too broadly against Defendants when it sustained Plaintiff's objection to recalling Officer Williams. At side bar, it was clear that the defense planned to recall Officer Williams for impeachment only. Prior disclosure of impeachment witnesses is not

14

required by Fed. R. Civil P. 26(a)(1)(A)(i) (Initial disclosures include "the name…of each individual likely to have discoverable information…that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."). Thus, to the extent the Court's ruling was incorrect, the harm was to Defendants.

### E. Conclusion

Considering Plaintiff's claims as a whole, his allegations relate entirely to the undersigned's adverse rulings and remarks, and discussion at hearings, in chambers and at side bar, and perceived tone and facial expressions at trial, none of which supplies adequate grounds for a new trial. *Liteky*, 510 U.S. at 555; *Leslie v. Grupo ICA*, 198 F. 3d 1152, 1159 (9th Cir. 1999). Indeed, plaintiff's allegations are more properly bases for appeal, not a new trial. Because nothing raised by Plaintiff rises to the level of conduct demonstrating bias, the Motion for New Trial is DENIED.

**IT IS SO ORDERED.**

Dated: May 31, 2017

_____
BETH LABSON FREEMAN
United States District Judge